Argued and submitted December 21, 2011, reversed July 5, 2012

STATE OF OREGON,
*Plaintiff-Respondent*,

*v.*

BILLY RAY HAUSKINS,
*Defendant-Appellant.*

Tillamook County Circuit Court
096364; A144002

281 P3d 669

Neil F. Byl, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Gregory A. Rios, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Ryan Kahn, Assistant Attorney General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

While on probation for possession of controlled substances, defendant produced a urine sample that tested positive for drugs. When his probation officer told him the test results, defendant stated, "Yes. I used." On the basis of that confession, the court found defendant in contempt of court under ORS 33.065[1] and ORS 33.105(2)[2] for violating a condition of his probation, and it imposed a punitive contempt sanction of 180 days in jail.[3] On appeal, defendant argues that the trial court erred in denying his motion for judgment of acquittal; in particular, he maintains that his confession was not corroborated (the urinalysis was not offered into evidence) and, under ORS 136.425, "a confession only [is not] sufficient to warrant the conviction without

---

[1] ORS 33.065 provides, in part:

"(2) The following persons may initiate the proceeding by an accusatory instrument charging a person with contempt of court and seeking a punitive sanction:

"(a) A city attorney.

"(b) A district attorney.

"(c) The Attorney General.

"* * * * *

"(5) Except as otherwise provided by this section, the accusatory instrument is subject to the same requirements and laws applicable to an accusatory instrument in a criminal proceeding, and all proceedings on the accusatory instrument shall be in the manner prescribed for criminal proceedings.

"(6) Except for the right to a jury trial, the defendant is entitled to the constitutional and statutory protections, including the right to appointed counsel, that a defendant would be entitled to in a criminal proceeding in which the fine or term of imprisonment that could be imposed is equivalent to the punitive sanctions sought in the contempt proceeding. This subsection does not affect any right to a jury that may otherwise be created by statute.

"* * * * *

"(9) In any proceeding for imposition of a punitive sanction, proof of contempt shall be beyond a reasonable doubt."

[2] ORS 33.105(2) provides, in part:

"Unless otherwise provided by statute, a court may impose one or more of the following punitive sanctions for each separate contempt of court:

"(a) A fine of not more than $500 or one percent of the defendant's annual gross income, whichever is greater.

"(b) Forfeiture of any proceeds or profits obtained through the contempt.

"(c) Confinement for not more than six months.

"(d) Probation or community service."

[3] Defendant was also charged with a probation violation, which he did not contest.

some other proof that the crime has been committed." We reverse.

As a preliminary matter, the state moved to dismiss the appeal, asserting that it is moot because defendant has served his contempt sanction and has been released from custody. The Appellate Commissioner denied the motion but gave the state leave to renew the argument in its merits brief. The state has done so, and we begin by addressing that argument.

In *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993), the Supreme Court stated that "[d]etermining mootness is one part of the broader question of whether a justiciable controversy exists." In order for a matter to present a justiciable controversy, a decision in the matter has to "have some practical effect on the rights of the parties to the controversy." *Id.*; *see also Corey v. DLCD*, 344 Or 457, 464, 184 P3d 1109 (2008) ("If it becomes clear in the course of a judicial proceeding that resolving the merits of a claim will have no practical effect on the rights of the parties, this court will dismiss the claim as moot." (Citing *Yancy v. Shatzer*, 337 Or 345, 349, 97 P3d 1161 (2004).)) "Even if the main issue in a controversy has been resolved, collateral consequences *may* prevent the controversy from being moot under some circumstances." *Barnes v. Thompson*, 159 Or App 383, 386, 977 P2d 431, *rev den*, 329 Or 447 (1999) (emphasis in original). A collateral consequence for purposes of mootness is a probable adverse consequence to the defendant as a result of the challenged action. *See Rondeau v. Board of Parole*, 232 Or App 488, 491, 222 P3d 753 (2009); *see also State v. Gibbens*, 25 Or App 185, 187-88, 548 P2d 523 (1976). However, the record must show more than a "mere possibility" that collateral consequences will occur; a speculative consequence does not prevent a case from being moot. *Brumnett*, 315 Or at 407. It is the defendant's burden to show a collateral consequence, and we will not assume one. *State ex rel State of Oregon v. Hawash*, 230 Or App 427, 428, 215 P3d 124 (2009) (dismissing appeal of contempt judgment as moot when defendant failed to identify collateral consequences).

In the state's view, defendant has not made a showing of collateral consequences. The state points out that,

although the judgment in this case refers to the determination of contempt as an "unclassified misdemeanor," the contempt sanction is not a crime and can have no future impact on a sentence that might be imposed for future criminal conduct; in any event, a potential collateral consequence on a defendant's "prior violation" history is purely speculative and will not, by itself, preclude mootness. *State v. Smith (A134313)*, 223 Or App 250, 252, 195 P3d 467 (2008). Further, although the contempt judgment orders defendant to "pay any required per diem fees" associated with his incarceration, there is no indication in the record on appeal that defendant has actually been assessed fees or has paid, or owes, any. *See Brumnett*, 315 Or at 407 (mere possibility that the state might seek an order requiring payment of fees is not sufficient to preserve a live controversy).

Defendant's primary assertion, however, is that the stigma associated with the contempt judgment is a collateral consequence, and that a reversal of the judgment of contempt would eliminate that stigma. He compares the stigma associated with a punitive contempt to the stigma associated with a conviction for a crime or a mental commitment, neither of which becomes moot because the resulting confinement has been served. *Gibbens*, 25 Or App at 187-88 (crime); *State v. E. A. L.*, 179 Or App 553, 556, 41 P3d 440 (2002) (mental commitment). The state counters that any possible stigma associated with defendant's contempt sanction is of no consequence, in light of defendant's uncontested probation violation on which the contempt is based.

In two recent cases, *State v. Phillips*, 234 Or App 676, 683 n 2, 229 P3d 631, *adh'd to on recons*, 236 Or App 461, 240 P3d 1099, *rev den*, 349 Or 370 (2010), and *Hawash*, we reached apparently conflicting conclusions on the question whether a defendant's completion of a punitive contempt sanction rendered an appeal moot. In *Phillips*, the defendant was summarily convicted of two counts of contempt for using profanity in the presence of the trial court, ORS 33.096, and was sentenced to confinement in the county jail for 60 days as a punitive sanction. The defendant asserted on appeal that the second count of contempt was not supported by the record. Because the defendant had completed his sanction,

the state filed a notice of probable mootness. ORAP 8.45. The Appellate Commissioner determined that the case was not moot, and neither party sought reconsideration of that order. Without amplification, we agreed with the Appellate Commissioner's conclusion, 234 Or App at 683 n 2, citing two cases, *State v. Meyer*, 31 Or App 775, 777 n 1, 571 P2d 550 (1977), and *Hawash*. *Meyer* held without discussion that a defendant's appeal of a punitive contempt order for which the sanction of confinement had been served was not moot, because the "conviction" had collateral consequences.[4] As authority for that holding, *Meyer*, in turn, cited two cases holding that collateral consequences prevent an appeal of a *criminal* conviction from becoming moot, even though the defendant had served the sentence at the time of appeal. 31 Or App at 777 n 1 (citing *Sibron v. New York*, 392 US 40, 50-58, 88 S Ct 1889, 20 L Ed 2d 917 (1968)); *State v. Meyer*, 12 Or App 486, 492-93, 507 P2d 824 (1973). Our implicit conclusion in *Meyer*, 31 Or App at 777 n 1, which we implicitly accepted in *Phillips*, was that a punitive contempt sanction of confinement has collateral consequences analogous to those of a criminal conviction.

In contrast to *Phillips*, in *Hawash*, we held in a per curiam opinion that the appellant's appeal of a contempt judgment in a dissolution matter, in which the appellant had been sentenced to two years bench probation, was moot, because the bench probation had expired, the "[a]ppellant has not identified any collateral consequences that flow from the judgment of contempt, and we are aware of none." 230 Or App at 428.

Reconciling those cases, we now conclude expressly that, although punitive contempt is not a "crime," *State v. Campbell*, 246 Or App 683, 684, 267 P3d 205 (2011), a judgment imposing a punitive sanction of confinement for contempt (like *Phillips* but unlike *Hawash*) is sufficiently analogous to a criminal conviction that it carries a collateral consequence of a stigma that is analogous to a criminal

---

[4] Although, in *Meyer*, we referred to the defendant's "conviction" for contempt, the legislature has since rewritten the statutes in terms of "remedial" and "punitive" contempt. *See State ex rel Gibbon v. West*, 118 Or App 583 n 1, 848 P2d 637 (1993) ("[Since 1991], there is no longer 'criminal' or 'civil' contempt. Contempt is either 'remedial' or 'punitive,' depending upon the sanction sought.").

conviction and, for that reason, an appeal of a judgment of punitive contempt is not rendered moot by completion of the confinement. In reaching that conclusion, we are particularly persuaded by the fact that, in the context of punitive contempt, the statutes authorize a sanction as punishment for past conduct and for a definite period of confinement of up to six months. ORS 33.105(2); *see also Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 103, 570 P2d 52 (1977) (punitive confinement for an act indicates the act is a crime). We also note that, in the context of punitive contempt, all the procedures applicable to a criminal proceeding (except the right to a jury trial) apply, ORS 33.065(5), (6), including the standard of proof beyond a reasonable doubt, ORS 33.065(9). Those factors lead us to conclude that the collateral consequence that flows from the imposition of a sanction of confinement for punitive contempt is analogous to that which flows from a criminal conviction. In this case, the sanction of confinement imposed for contempt adds six months to the sanction of confinement imposed as a result of the probation violation. For that reason, we reject the state's contention that the contempt sanction does not give rise to stigma in addition to that already resulting from the probation conviction. *See E. A. L.,* 179 Or App at 556 (the larger the period of commitment, the greater the stigma). We conclude that the sanction having been served does not render the appeal moot.

On the merits, defendant contends that the trial court erred in denying his motion for judgment of acquittal because the evidence was insufficient to establish a contempt; the court having ruled that the test result itself was inadmissible as substantive evidence, the only evidence that he had violated his probation by using drugs, defendant contends, was his uncorroborated confession and, under ORS 136.425(1),[5] a confession alone cannot support a finding of contempt. That statute provides:

> "A confession or admission of a defendant, whether in the course of a judicial proceeding or otherwise, cannot be given in evidence against the defendant when it was made

---

[5] ORS 136.425 was amended in 2009, Or Laws 2009, ch 875, § 1, but the amendments do not apply to defendant's acts, which occurred before their effective date.

> under the influence of fear produced by threats; nor is a confession only sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed."

Although ORS 136.425 applies only to crimes, and, as previously noted, contempt is not a crime, *Campbell*, 246 Or App at 684, ORS 33.065(6) provides that all of the statutory protections of criminal cases are applicable in punitive contempt proceedings. We therefore conclude that ORS 136.425 applies in this context. Further, we have no difficulty concluding that defendant's statement was a "confession" for which corroboration was required under ORS 136.425(1); a statement is a confession if it is "made after the commission of the crime in question, for the purpose of acknowledging that the speaker is guilty of some criminal offense," *State v. Manzella*, 306 Or 303, 316, 759 P2d 1078 (1988).

Corroboration must consist of proof of facts, independent of the confession itself, that the defendant committed the underlying crime. *State v. Lerch*, 296 Or 377, 394, 677 P2d 678 (1984). The standard for corroboration under ORS 136.425(1) is low. *State v. Kelley*, 239 Or App 266, 277, 243 P3d 1195 (2010), *rev den*, 350 Or 131 (2011). Further, to corroborate defendant's confession, the state did not need to present evidence beyond a reasonable doubt on every element of the alleged contempt; its burden was only to submit sufficient evidence from which a rational factfinder could draw an inference that tends to prove that the charged contempt occurred—*i.e.*, that defendant consumed a controlled substance in violation of his probation conditions. *Lerch*, 296 Or at 398. On the other hand, corroboration cannot be established by a fact that merely adds to the reliability of the confession because it is consistent with the known facts of the crime. *State v. Delp*, 218 Or App 17, 29 n 10, 178 P3d 259, *rev den*, 345 Or 317 (2008); *State v. Fry*, 180 Or App 237, 244, 42 P3d 369 (2002) (the purpose of the corroboration requirement is to provide some evidence independent of the confession that a crime has been committed, not simply to make it more likely that the confession is reliable).

The state argues that defendant's confession that he had used drugs was corroborated by the following facts: (1) defendant was on probation for a methamphetamine felony possession charge; (2) the court had ordered him to seek drug treatment and he had not done so; (3) defendant made his statements in reaction to learning the result of the urinalysis; (4) defendant seemed nervous during the confession; and (5) defendant had undergone an assessment for treatment only about one month before his meeting with his probation officer, allowing the inference that defendant had not yet made a lasting change with respect to his drug use and, thus, was still using drugs.

In defendant's view, this evidence was not sufficient because, although it may be consistent with defendant having used drugs during his probation and, perhaps, would increase the likelihood that the confession was reliable, it was not independent of the confession and relevant to the commission of the underlying contempt. We agree with that assessment. That defendant had been on probation and had been ordered to undergo drug treatment, but had not done so, does not provide independent proof that defendant had actually used drugs in violation of his probation. As we held in *Delp* and *State v. Simons*, 214 Or App 675, 167 P3d 476 (2007), *rev den,* 344 Or 43 (2008), for purposes of corroboration, a defendant's predisposition to act in some fashion cannot corroborate the confession that he did so. The fact that defendant made his confession in reaction to the urinalysis results is a circumstance of the confession itself and not a fact independent of it; a fact cannot corroborate itself. Likewise, nervousness during the confession itself is not *independent* corroboration of the alleged drug use to which defendant confessed.

In sum, except for the confession itself, the state adduced only the following admissible evidence: Defendant had been convicted of possession of a controlled substance. He was required as a condition of his probation to undergo drug treatment, and did not do so. He was also required to submit to a urine test. He did so. His probation officer informed him of the results. That evidence is insufficient to corroborate the confession.

Reversed.