Submitted March 22; on respondent's motion to dismiss filed February 5, and
appellant's response to motion to dismiss filed February 19, motion to dismiss
appeal granted, appeal dismissed as moot July 27, 2016

In the Matter of N. L.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. E.,
*Appellant.*

Josephine County Circuit Court
15JU01934; A160382

381 P3d 1097

Shannon Storey, Chief Defender, Juvenile Appellate
Section, and Holly Telerant, Deputy Public Defender, Office
of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith,
Deputy Solicitor General, and Keith L. Kutler, Assistant
Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Tookey, Judge,
and DeHoog, Judge.

**TOOKEY, J.**

In this dependency case, mother appeals from a judgment of the juvenile court assuming jurisdiction over her four-year-old son N pursuant to ORS 419B.100(1)(c),[1] based on findings that "mother physically abused the child's sibling" and "mother's erratic behaviors interfere with her ability to safely parent" N. While mother's appeal was pending, the juvenile court dismissed jurisdiction and terminated the wardship. For the reasons explained below, we dismiss the appeal as moot.

An appeal is moot when a decision on the main issue in controversy will no longer have a practical effect on the rights of the parties. *Dept. of Human Services v. G. D. W.*, 353 Or 25, 32, 361 P3d 1 (2012). A termination of the juvenile court's jurisdiction and the wardship ordinarily renders an appeal of the underlying jurisdictional judgment moot. *Dept. of Human Services v. C. W. J.*, 260 Or App 180, 181-82, 316 P3d 423 (2013). After the juvenile court dismissed the jurisdictional judgment and the wardship over N, the Department of Human Services (DHS) filed a motion to dismiss the appeal as moot. ORAP 8.45 (providing for notice upon probable mootness).

Mother opposes the motion, contending that a reversal of the underlying judgment would have a practical effect on her, because there are probable adverse consequences from the existence of the dismissed jurisdictional judgment. *See G. D. W.*, 353 Or at 32 (adverse collateral effects of the dismissed judgment may prevent a case from becoming moot); *Dept. of Human Services v. B. A.*, 263 Or App 675, 681-82, 330 P3d 47 (2014) (a probable adverse effect as a result of the challenged action will prevent an appeal from becoming moot); *State v. Hauskins*, 251 Or App 34, 36, 281 P3d 669 (2012) (a person asserting that an appeal is not moot must show a probable adverse consequence from the underlying judgment—a "mere possibility" of adverse consequences is not sufficient).

---

[1] The juvenile court has exclusive jurisdiction in any case involving a person who is under 18 years of age and "[w]hose condition or circumstances are such as to endanger the welfare of the person or of others[.]"

Whether an underlying jurisdictional judgment gives rise to probable adverse consequences depends on the circumstances of the particular case. In support of her contention that the appeal is not moot, mother contends that there are two probable adverse consequences of the jurisdictional judgment: First, the existence of the dismissed judgment prevents mother from challenging the "founded" disposition in her DHS file, and that "founded" disposition in her child welfare record will have a negative effect on mother in the event of future interactions with DHS. Second, mother contends that the judgment's determination that mother abused her older child and engaged in erratic behavior creates a social stigma.

DHS responds that any potential adverse consequence of the jurisdictional judgment as a result of the additional "founded" disposition on mother's record with DHS is purely speculative, because this is not mother's first interaction with DHS: her child welfare history includes previous "founded" dispositions in 2011 and 2012 involving a threat of harm and neglect. Consequently, DHS asserts, the judgment in this case is duplicative of information already in mother's child welfare record, and it is speculative whether there would be any additional negative impact from the third "founded" disposition in the event that DHS receives a future report of child abuse. With respect to social stigma, DHS argues, citing *B. A.*, 263 Or App at 679, that any social stigma would not be alleviated by the reversal of the underlying judgment and is, in any event, minimal and speculative.

For reasons similar to those that we expressed in *B. A.*, we reject mother's contention that there are probable adverse consequences from the dismissed jurisdictional judgment. As in *B. A.*, 263 Or App at 679-82, the negative effects that mother asserts related to an inability to challenge a "founded" disposition are more theoretical than probable. In other cases, we have considered the negative effect of an inability to challenge a "founded" disposition when there were other, actual negative effects of the jurisdictional judgment. For example, in *Dept. of Human Services v. A. H.*, 275 Or App 788, 791, 365 P3d 1183 (2015), we concluded that a single "founded" disposition based on neglect, along with the

negative effects of the jurisdictional judgment on the parent's employment, were adverse consequences that prevented the case from becoming moot. *See also State ex rel Juv. Dept. v. L. B.*, 233 Or App 360, 362-65, 226 P3d 66 (2010) (dismissed judgment resulted in a probable adverse consequence where a single "founded" disposition of abuse on parents' record prevented father from obtaining an employment-related security clearance). Here, mother expresses concern for the possibility that a "founded" disposition will have an adverse effect should she have a future interaction with DHS. But it is pure speculation that mother will have future interactions with DHS. *B. A.*, 263 Or App at 682. Additionally, we agree with DHS that, given the two previous "founded" dispositions, any additional adverse effect from a third "founded" disposition is speculative.

With regard to social stigma, mother states, simply, that there is a social stigma associated with a judgment stating that mother physically abused her daughter and engaged in erratic behavior. We recognize that the factual bases for the jurisdictional judgment here are potentially more stigmatizing than the undisputed fact of one parent's substance abuse and the other parent's lack of a custody order that we held in *B. A.* did not establish a probable adverse consequence. *B. A.*, 263 Or App at 680-81 (distinguishing potential adverse consequences of judgment based on abuse or neglect). But, as we concluded in *B. A.*, 263 Or App at 679, in light of the confidentiality of DHS and juvenile court records, we conclude in this case that the possibility of a social stigma associated with the underlying judgment itself is minimal and speculative. Additionally, a stigma already exists for mother as a result of mother's involvement with DHS, and that stigma would not be alleviated by a reversal of the underlying judgment.

For the reasons stated, we conclude that mother has not shown probable adverse consequences from the dismissed jurisdictional judgment, and we therefore dismiss the appeal as moot.

Motion to dismiss appeal granted; appeal dismissed as moot.